PAUL E. WALTERS, Plaintiff
v.
ROY A. COOPER, III, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL FOR THE STATE OF NORTH CAROLINA, Defendant

No. COA12-1221

Filed 19 March 2013

**Sexual Offenders—sex offender registration—prayer for judgment continued**

A true prayer for judgment continued does not operate as a "final conviction" for the purposes of the Sex Offender and Public Protection Registration Program. Accordingly, plaintiff's motion for summary judgment in an action seeking a declaratory judgment that he did not have to register as a sex offender should have been granted, and the trial court erred in granting judgment for defendant.

**WALTERS v. COOPER**

[226 N.C. App. 166 (2013)]

Judge STEELMAN dissenting

Appeal by plaintiff from order entered 23 July 2012 by Judge Quentin T. Sumner in Nash County Superior Court. Heard in the Court of Appeals 13 February 2013.

*Etheridge & Hamlett, LLP, by J. Richard Hamlett, II, for plaintiff-appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General William P. Hart, Jr., for defendant-appellee.*

HUNTER, JR., Robert N., Judge.

Paul E. Walters ("Plaintiff") appeals from an order denying his Motion for Summary Judgment and granting summary judgment for Defendant. On appeal, Plaintiff argues the trial court erred in concluding that Plaintiff has a "reportable conviction" which subjects him to the Sex Offender and Public Protection Registration Program. For the following reasons, we reverse.

## I. Factual & Procedural History

On 16 August 2006 Plaintiff, then 19 years old, pled guilty to the criminal charge of sexual battery in Nash County Superior Court. On the same date, Prayer for Judgment was continued by the trial court upon payment of costs and attorney fees, and so long as Plaintiff did not have any contact with the victim or her immediate family. Plaintiff was not required by the trial court to comply with the registration requirements of the Sex Offender and Public Protection Registration Program.

From the date of the Prayer for Judgment Continued until November 2011, Plaintiff resided in Franklin County and was not registered as a sex offender. In November 2011, the Franklin County Sheriff's Office notified Plaintiff that because of his conviction for sexual battery, he was required to register as a sex offender, or else be criminally charged for his failure to do so. On 30 November 2011 Plaintiff registered as a sex offender with the Franklin County Sheriff's Office. Plaintiff filed this action on 4 April 2012, seeking (1) a Declaratory Judgment that he is not subject to registration and (2) an order directing the Office of the North Carolina Attorney General to remove his name and other information from the sex offender registry.

Except for the conviction in question, Plaintiff has no criminal convictions which would require him to maintain registration as a sex offender. At the hearing on Plaintiff's Motion for Summary Judgment, the parties agreed to these facts and stipulated that there was no issue of material fact before the Court. The trial court granted summary judgment for Defendant on 23 July 2012. Plaintiff filed a timely written notice of appeal. Plaintiff has remained registered during the pendency of this appeal.

## II. Jurisdiction & Standard of Review

As Plaintiff appeals from the final judgment of a superior court, an appeal lies of right to this Court pursuant to N.C. Gen. Stat. § 7A–27(b) (2011).

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 523–24, 649 S.E.2d 382, 385 (2007)).

## III. Analysis

Plaintiff's sole argument on appeal is that the trial court erred in concluding that the Prayer for Judgment Continued ("PJC") entered on his sexual battery conviction makes that conviction a "final conviction," and thus a "reportable conviction," such that Plaintiff must comply with the provisions of the Sex Offender and Public Protection Registration Program.

North Carolina's Sex Offender and Public Protection Registration Program requires any individual "who has a reportable conviction . . . to maintain registration with the sheriff of the county where the person resides" for a period of at least 30 years. N.C. Gen. Stat. § 14-208.7(a) (2011). A "reportable conviction" is defined as "[a] *final conviction* for an offense against a minor, a sexually violent offense, or an attempt to commit any of those offenses." N.C. Gen. Stat. § 14-208.6(4) (2011) (emphasis added). Sexual battery falls within the definition of "sexually violent offense." *See* N.C. Gen. Stat. § 14-208.6(5) (2011).

The term "final conviction," however, is not defined in the registration statute. Thus, the question presented by this appeal is whether a PJC entered upon a conviction makes that conviction a "final conviction," and therefore a "reportable conviction" for the purposes of the registration statute. After review of analogous case law and consideration of the

legislature's intent, we hold that a true PJC does not operate as a "final conviction" under the registration statute.

After a defendant has been found guilty or entered a guilty plea, a trial court may (1) pronounce judgment and place it into immediate execution; (2) pronounce judgment and suspend or stay its execution; or (3) enter a PJC. *State v. Griffin*, 246 N.C. 680, 682, 100 S.E.2d 49, 50 (1957). A prayer for judgment continued upon payment of costs, without more, does not typically constitute an entry of judgment. *See* N.C. Gen. Stat. § 15A-101(4a) (2011). However, our Supreme Court has acknowledged that a continuation of entry of judgment may lose its character as "true" PJC and is converted into a "judgment" when it includes conditions "amounting to punishment." *Griffin*, 246 N.C. at 683, 100 S.E.2d at 51.

At the outset, we note that none of the conditions imposed upon Plaintiff in this case appear to be punitive in nature, and Defendant does not contend otherwise on appeal. In fact, Defendant acknowledges that "no punitive sentence was pronounced against [Plaintiff]." "Issues not presented and discussed in a party's brief are deemed abandoned." N.C. R. App. P. 28(a). Accordingly, we conclude Plaintiff in fact received a "true PJC" for the purposes of our analysis.

"Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give it its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *State v. Camp*, 286 N.C. 148, 152, 209 S.E.2d 754, 756 (1974) (quotation marks and citation omitted). In this case, however, the term "final conviction" has no ordinary meaning, and is not otherwise defined by the statute. In situations such as this, "[w]here the plain meaning is unclear, legislative intent controls." *Sharpe v. Worland*, 137 N.C. App. 82, 85, 527 S.E.2d 75, 77 (2000). In ascertaining the legislature's intent, our Courts should consider the statute in its entirety, "weighing the language of the statute, its spirit, and that which the statute seeks to accomplish." *Harris v. Nationwide Mut. Ins. Co.*, 332 N.C. 184, 191, 420 S.E.2d 124, 128 (1992) (quotation marks and citation omitted). We also assume that the legislature acted with full knowledge of prior and existing law in drafting any particular statute. *State v. Benton*, 276 N.C. 641, 658, 174 S.E.2d 793, 804 (1970).

Our Court has considered the precise issue presented by this appeal before, in the context of our motor vehicle statutes. *See Florence v. Hiatt*, 101 N.C. App. 539, 400 S.E.2d 118 (1991). In *Florence*, a criminal defendant was convicted of operating a motor vehicle without a license. He received a PJC from the trial court, which included certain

non-punitive conditions. *Id.* at 539–40, 400 S.E.2d at 119. Subsequently, the Department of Motor Vehicles revoked the defendant's license pursuant to the then-applicable version of N.C. Gen. Stat. § 20-28.1, which permitted the DMV to revoke a driver's license upon conviction of a moving violation during a period of suspension. *Id.* At that time, N.C. Gen. Stat. § 20-24 defined "conviction" as a *"final conviction* of a criminal offense." *Id.* at 540–41, 400 S.E.2d at 119–20; N.C. Gen. Stat. § 20-24(c) (1987) (emphasis added).[1]

The defendant in *Florence* obtained a permanent injunction against the DMV enjoining it from suspending his license. The DMV appealed. *Id.* at 540, 400 S.E.2d at 119. "The issue on appeal [was] whether the conditional language in [the trial court's] order render[ed] the putative 'prayer for judgment continued' a final conviction." *Id.* This Court ultimately held that a true PJC does not operate as a "final conviction" for the purposes for Chapter 20. *Id.* at 542, 400 S.E.2d at 121.

The registration statute in the instant case was first enacted in 1995. We must therefore presume that the legislature was aware of our prior case law, albeit in another context, interpreting the term "final conviction" as excluding convictions which are followed by true PJCs. In drafting the registration statute, the legislature could have indicated that *any* conviction triggers the provisions of the statute, as it has in other contexts. *See, e.g.*, N.C. R. Evid. 609 (allowing in some circumstances impeachment of a witness via evidence that the witness "has been convicted of a felony"); N.C. Gen. Stat. § 14-415.1 (2011) (making it unlawful for "any person who has been convicted of a felony" to possess a firearm and specifically defining "conviction" as "a final judgment in any case in which felony punishment is . . . authorized, without regard . . . to the sentence imposed").

Instead, the legislature chose the registration statute at issue in this case to apply to only those individuals who have obtained a *"final* conviction," and did not provide any additional definition for that term. We must assume that the legislature enacted Section 14-208.6 with an awareness of *Florence*, and yet chose not to articulate whether PJCs are "final convictions" for the purposes of the registration statute. This suggests that the legislature saw no need to do so, even in light of case law holding PJCs are not "final convictions" in the context of another statutory scheme employing similar language.

---

1. The definition of "conviction" in Chapter 20 is now found in N.C. Gen. Stat. § 20-4.01(4a) (2011).

Our Supreme Court has not ruled on this particular issue, and we are bound by previous holdings of this Court. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). Therefore, in reliance on *Florence,* we hold that a true PJC does not operate as a "final conviction" for the purposes of the Sex Offender and Public Protection Registration Program. Accordingly, Plaintiff's motion for summary judgment should have been granted, and the trial court erred in granting judgment for Defendant.

Defendant acknowledges that "it is reasonable to conclude . . . that the use of the word 'final' would import some meaning for the purposes of [S]ection 14-208.6(4)." However, Defendant suggests that purpose of the word "final" in the statute is to indicate that the "conviction" must be final within the trial division before it becomes a "final conviction." For example, Defendant contends a conviction would not be "final" if it were obtained in district court and an appeal *de novo* was pending in the superior court. We find this argument unpersuasive. Plaintiff's particular offense notwithstanding, the vast majority of offenses which subject an individual to registration are felonies, and thus are generally tried in superior court from the outset. *See* N.C. Gen. Stat. §§ 7A-271, 7A-272 (2011) (specifying the original jurisdiction of superior and district courts). It would seem unlikely that the legislature inserted the word "final" to guard against a contingency which could only occur in a small minority of cases implicating the statute.

## IV. Conclusion

For the foregoing reasons, the order of the trial court is reversed and remanded for entry of an order directing the Office of the Attorney General to remove Plaintiff's name and other information from the sex offender registry.

REVERSED AND REMANDED.

Judge GEER concurs.

Judge STEELMAN dissents in a separate opinion.

STEELMAN, Judge, dissenting.

The majority's analysis is based upon case law construing provisions of Chapter 20 of the General Statutes, which deals with motor vehicles. This is a case involving sex offender registration under Article 27A of Chapter 14 of the General Statutes. The purpose of this statute was set forth in N.C. Gen. Stat. § 14-208.5:

WALTERS v. COOPER

[226 N.C. App. 166 (2013)]

> The General Assembly recognizes that sex offenders often pose a high risk of engaging in sex offenses even after being released from incarceration or commitment and that protection of the public from sex offenders is of paramount governmental interest.

N.C. Gen. Stat. § 14-208.5 (2011).

The majority acknowledges that the crime to which defendant pled guilty was a "sexually violent offense" under the provisions of N.C. Gen. Stat. § 14-208.6(5). Because a final conviction for a sexually violent offense is a "reportable conviction" under N.C. Gen. Stat. § 14-208.6(4)(a), defendant was required to register as a sex offender. N.C. Gen. Stat. § 14-208.7(a) (2011).

The only issue presented in this case is whether the judgment entered in the underlying criminal case was a "final conviction" as required by N.C. Gen. Stat. § 14-208.6(4)(a). I would look for resolution of this question to the provisions of Chapter 15A of the General Statutes, dealing with criminal procedure, rather than to the motor vehicle laws.

N.C. Gen. Stat. § 15A-101(4a) defines the term "entry of judgment" as follows: "Judgment is entered when sentence is pronounced. Prayer for judgment continued upon payment of costs, without more, does not constitute the entry of judgment." N.C. Gen. Stat. § 15A-101(4a) (2011).

As acknowledged by the majority, the prayer for judgment entered in the underlying criminal case was not a "[p]rayer for judgment continued upon payment of costs, without more[.]" N.C. Gen. Stat. § 15A-101(4a). The trial court placed several explicit conditions upon the entry of the prayer for judgment continued.

In *State v. Brown*, 110 N.C. App. 658, 430 S.E.2d 433 (1993), this Court set forth the circumstances where the entry of a prayer for judgment continued constituted "entry of judgment."

> "When the prayer for judgment is continued there is no judgment-only a motion or prayer by the prosecuting officer for judgment." *Griffin*, 246 N.C. at 683, 100 S.E.2d at 51. When, however, the trial judge imposes conditions "amounting to punishment" on the continuation of the entry of judgment, the judgment loses its character as a PJC and becomes a final judgment. *Id.* Conditions "amounting to punishment" include fines and imprisonment. *Id.*

> Conditions not "amounting to punishment" include "requirements to obey the law," *State v. Cheek*, 31 N.C. App. 379, 382, 229 S.E.2d 227, 228 (1976), and a requirement to pay the costs of court. *State v. Crook*, 115 N.C. 760, 764 (1894); N.C.G.S. § 15A-101(4a) (1988) ("[p]rayer for judgment continued upon payment of costs, without more, does not constitute the entry of judgment").

*State v. Brown*, 110 N.C. App. at 659-60, 430 S.E.2d at 434.

In *Brown*, we held that a prayer for judgment continued upon defendant continuing with psychiatric treatment "went beyond defendant's obligation to obey the law, and was thus punishment." *Id.* at 660, 430 S.E.2d at 434. We further noted that violation of this condition "subjected the defendant to criminal contempt of court[.]" *Id.*

In the instant case, the entry of the prayer for judgment continued was expressly conditioned upon defendant not having any contact or communication with the victim; defendant not being on the victim's property; and defendant not having any contact with any member of the victim's immediate family. This condition amounts to more than a mere requirement that defendant "obey the law." It places fundamental restrictions upon his rights of association and restrains him from going upon the victim's property. These conditions constitute "punishment" for which defendant could be subject to contempt. Under the rationale of *Brown* and N.C. Gen. Stat. 15A-101(4a), the judgment entered upon the defendant's guilty plea to the charge of sexual battery was a "final conviction" as required by N.C. Gen. Stat. § 14-208.6(4)(a).

The majority relies upon the following sentence from the State's brief to support its assertion that the State acknowledged that the conditions imposed were not punishment:

> Plaintiff, whose guilt for the registerable offense of sexual battery has been definitively established in a court of law, should not be permitted to evade the civil regulatory scheme of the Registration Programs, the purpose of which is to protect the general public, merely because no punitive sentence was pronounced against him.

First, the State's argument refers to "no punitive sentence." In fact, the judgment did not impose a sentence upon defendant. This passage does not refer to whether the conditions imposed upon the prayer for judgment constituted punishment. Second, whether a condition of a prayer for judgment continued constituted "punishment" is a question

of law for the courts to determine. It is not a question of fact as to which the parties, on appeal, can stipulate. *See State v. Rogers*, 275 N.C. 411, 421, 168 S.E.2d 345, 350 (1969) (holding that "[w]hat constitutes cruel and unusual punishment is a question of law").

I would affirm the order of the learned trial judge.